UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANIEL JOSEPH SOLOVY,

Civil No. 2:08-cv-12303

          Plaintiff,                                    Hon. John Feikens

-vs-

CITY OF UTICA POLICE OFFICER
GREGORY MORABITO, badge no. 15,
CITY OF UTICA POLICE SERGEANT
JEROME CARROLL, badge no. 873,
AND THE CITY OF UTICA, jointly
and severally,

          Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Overview**

Plaintiff Daniel Joseph Solovy is diabetic.  On June 29, 2006, City of Utica Police

Officer Gregory Morabito and Sergeant Jerome Carroll (the "Officers") detained Solovy after

Solovy went into shock due to hypoglycemia while driving his car.  Solovy brings this action

against the individual Officers and the City of Utica for violating his constitutional rights during

this detention.  Defendants have moved for summary judgment.  For the reasons stated below, I

GRANT Defendants' Motion for Summary Judgment.

**Facts**

Solovy is a citizen and resident of Macomb County.  He is a type 1 diabetic.  Type 1

diabetes is a chronic disease that occurs when the pancreas does not produce enough insulin to

properly control blood sugar levels. On June 29, 2006, Solovy was driving his car when he felt a diabetic episode coming on. He states that he stopped his car at a gas station at 18 Mile and Mound to pick up some candy. Solovy is unable to remember what happened next; however, the evidence indicates that he did not enter the gas station and instead drove to the corner of Van Dyke and Auburn Road where he passed out in the driver's seat of his car.

Defendant Officer Carroll arrived on the scene at Van Dyke and Auburn Road at approximately 10:12 pm (22:11:53 according to police records) and observed a car stopped in the road blocking traffic. Solovy states that he remembers being awakened by an officer tapping on his car window; this officer was Sergeant Carroll. He states that he opened the door and told the officer that he needed food. Solovy further states that the officer instead cuffed his right hand, which was placed at 12 o'clock on the steering wheel, and that the officer "ripped" him out of the car by the other end of the handcuff and threw him face down on the cement. Solovy alleges that he told the officer that he had a bad right shoulder, but that the officer continued to cuff Solovy, forcing his right arm behind his back. Solovy claims that he heard the arm crack. Solovy also alleges that he repeatedly asked the officer to loosen the handcuffs, but that the officer did not do so. He states that he continued to ask for food, but the officer responded that "he was not a servant." Solovy also alleges that the officer gave him several Breathalyzer tests.

Officer Morabito was dispatched to the scene shortly after Sergeant Carroll arrived. Officer Morabito immediately saw that Solovy's car was blocking traffic and that Solovy appeared confused, unaware of his surroundings, and that he was having trouble answering questions. The Officers also noticed that Solovy had an open intoxicant in his automobile. Both Officers state that they did not put handcuffs on Solovy at any point. Officer Morabito, a

2

certified paramedic, observed that Solovy had an insulin pump attached to his body.  As a result of observing the insulin pump and Solovy's condition, the Officers concluded that the Solovy was having a diabetic reaction.  At approximately 10:17 pm (22:16:51 according to police records), Emergency Medical Services ("EMS") was dispatched to the scene.  According to police records, a period of 4 minutes and 58 seconds elapsed between Sergeant Carroll's arrival on the scene and the dispatch of EMS.

According to the records for Solovy's cell phone, at 10:19 pm Solovy's family called his cell phone.  Sergeant Carroll states that he answered the phone.  Solovy's Complaint states that Solovy's daughter made the call and that Officer Carroll told her "Your dad's drunk; we're taking him to jail!"  The Complaint further states that "[o]nly after receiving Plaintiff's daughter's phone call did the Defendant Officers think to summon emergency medical assistance to the scene."  However, the Complaint's allegations are inconsistent with police records and phone records that show that EMS was dispatched two minutes before Solovy's daughter made the phone call.  The validity of the order of events as reflected in police records is reinforced by the testimony of Solovy's mother, who stated that after she took the phone from Solovy's daughter she heard "ambulances, sirens."

When EMS arrived, the Officers along with the Emergency Medical Technicians ("EMTs") moved Solovy onto a cot in the back of the emergency vehicle.  The EMS Ambulance Run Report Form (the "EMS report") notes that Solovy was confused.  Officer Jason Ferrell, a paramedic, started an IV was started on Solovy's arm and left it there for approximately eight minutes, until Solovy's blood glucose levels were raised sufficiently.  Officer Ferrell, testified that he would not have been able to start the IV line had Solovy been handcuffed.  The EMS

3

report also notes that Solovy stated that he had consumed some alcohol.

After EMS treated Solovy, he was alert.  At this point he refused further treatment and declined to be taken to the hospital.  The EMS report does not note any injuries that might have resulted from the excessive use of force by the Officers.

The Officers summoned Solovy's family to the scene to pick him up because they would not permit him to operate his vehicle.  Officer Morobito stayed behind with Solovy until Solovy's mother came to pick him up.

Solovy also states that he later discovered that items on the inside of his car had been tossed about, including his bag of diabetic medical devices, and that his medical alert necklace had been broken.  Solovy claims that the Officers did this when they searched his vehicle.  The Officers deny that they ever searched Solovy's vehicle and state that the disarray in Solovy's car was probably due to Solovy searching for candy or food while he was in diabetic shock.

Solovy went to the emergency room the next day at 5 p.m., complaining of weakness and pain in his right hand and wrist.  The medical report from this visit mentions that Solovy had abrasions on his wrists, as well as traumatic nerve injury in his upper extremity, involving the radial nerve.  This report also notes that Solovy had a history of carpal tunnel syndrome.  Indeed, the record as a whole indicates that Solovy was receiving treatment for problems with his right shoulder and elbow as early as 2001.  Early in 2006, four months prior to the incident at issue here, Solovy had requested a referral to an orthopedist for pain in his shoulder and had been taking Vicoden for pain.

On August 22, 2008, Solovy had ulnar nerve decompression and carpal tunnel release surgery on his right arm.  The surgical notes indicate that the procedures were performed to

4

alleviate persistent carpal tunnel syndrome and cubital tunnel syndrome in his right arm.

Solovy brings this action to recover for his alleged injuries resulting from the events of June 29, 2006.  Solovy filed his Complaint for Damages and Jury Demand in this Court on May 28, 2008.  Count I of Solovy's Complaint states that the Defendant Officers violated his right to be free from excessive force, violated his right to be free from arrest and imprisonment without probable cause, and were deliberately indifferent to his medical needs.  Count II of the Complaint states that the City of Utica has established a practice, policy, or custom which directly and proximately caused the injuries and harm suffered by Solovy.  On January 14, 2009, Defendants submitted a Motion for Summary Judgment that seeks the dismissal of Solovy's Complaint in its entirety.  This Court held a hearing Defendants' Motion on March 5, 2009.  At this hearing, Solovy's attorney conceded that Solovy does not have sufficient evidence to support his claim against the City of Utica.  The parties continue to dispute whether the individual Officers are entitled to summary judgment.

### Standard of Review

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if proof of that fact would establish or refute one of the essential elements of a claim or defense and would affect the application of governing law to the rights and obligations of the parties.  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).  The court must view the evidence and any inferences drawn therefrom in a light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986) (citations omitted); Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).

The burden on the moving party is satisfied where "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). For a claim to survive summary judgment, the nonmovant must offer more than a mere scintilla of evidence as to the material facts. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," summary judgment should be granted. Matsushita, 475 U.S. at 587. The trial court has some discretion to determine whether the nonmovant's claim is plausible. Betkerur v. Aultman Hosp. Ass'n, 78 F.3d 1079, 1087-88 (6th Cir. 1996); see also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989).

## Analysis

### I) Solovy's Claim Against the City of Utica

Solovy brings his claim against the City of Utica under 42 U.S.C. § 1983. "Section 1983 actions against municipalities require satisfaction of certain special elements, including proof (1) that the City pursued an official custom or policy of failing to adequately train, supervise, or discipline its officers in a particular matter, and (2) that such official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." Hawks v. Jones, 105 F.Supp.2d 718, 723 (E.D.Mich. 2000) (quoting City of Canton v. Harris, 489 U.S. 378, 387-88 (1989)). The Supreme Court has also held that the liability of the city depends on whether the violation relevant to the pending litigation is attributable to the municipal policy or practice. City of Canton, 489 U.S. at 389. The deliberate indifference toward the constitutional rights of affected

6

persons must be in the face of plain evidence that further training is necessary.  Id. at 390.

At this Court's March 5, 2009, hearing, Solovy's attorney conceded that Solovy cannot put forth sufficient evidence to support the claims against the City of Utica.  This Court agrees that the record contains no significant evidence showing that: the City of Utica pursued an official policy of failing to adequately train, supervise, or discipline its officers in proper handcuffing or in identifying and properly caring for diabetic detainees; and that this official policy was adopted with deliberate indifference towards the constitutional rights of persons affected by the policy or custom.  *A fortiori*, Solovy cannot show that the alleged violations of his rights are attributable to such a policy.

Therefore, I GRANT Defendants' Motion for Summary Judgment with respect to Solovy's claim against the City of Utica.

## II) Solovy's Claims Against the Officer Morabito and Sergeant Carroll

### A) Overview

Solovy brings 42 USC § 1983 claims against Officer Morabito and Sergeant Carroll for the violation of his constitutional rights.  It is undisputed that the Officers were acting under the color of law.  Solovy contends that the Officers violated his right to be free from excessive force, violated his right to be free from arrest and imprisonment without probable cause, and were deliberately indifferent to his medical needs.  Defendants argue that this Court should grant them summary judgment on Solovy's claims against the Officers because Defendants have met their burden under Rule 56(c).  Alternatively, Defendants argue that even if there are genuine issues of material fact that remain regarding whether the Officers violated Solovy's constitutional rights, they are entitled to qualified immunity on Solovy's claims against them.

7

**B) Constitutional Violations**

**1) Excessive Force**

Solovy claims that the actions of Officer Morabito and Sergeant Carroll violated his Fourth Amendment rights by subjecting him to excessive force in effecting the seizure in question.  Claims regarding police officers' use of excessive force in the course of an arrest or other seizure are governed by the Fourth Amendment. Burchett v. Kiefer, 310 F.3d 937, 944 (6th Cir. 2002).  The Fourth Amendment requires that an officer's use of force be objectively reasonable.  Graham v. Connor, 490 U.S. 386, 395 (1989).

In order to determine whether the force used by a law enforcement officer to effect a particular seizure is reasonable under the Fourth Amendment, a court must carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interest at stake.  Id. at 396.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Id.  "The reasonableness of a particular use of force must be judge from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight."  Id. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation."  Id. at 396-97.

"[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and

circumstances confronting them, without regard to their underlying intent or motivation." Id. at

397.  The demeanor of the suspect is particularly important to a reasonable force analysis.

Solomon v. Auburn Hills Police Dep't, 389 F.3d 167, 172 (6th Cir. 2004).  Courts should also

pay close attention to whether the suspect posed, or appeared to pose, an immediate threat to the

safety of the officers or others.  See Burchett, 310 F.3d at 944.

Under this standard, Solovy's claim fails against both Officer Morabito and Sergeant

Carroll because Solovy cannot show that their use of force against him was objectively

unreasonable.

### i) Officer Morabito

Taken in a light most beneficial to Solovy, the facts in this case are insufficient to show

that Officer Morabito violated Solovy's right to be free from the use of excessive force.  The

record indicates that Officer Morabito, upon arriving at the scene, quickly noticed that Solovy

was a diabetic and summoned medical assistance.  Officer Morabito testifies that he never saw

Solovy in handcuffs; however, even assuming that Solovy was handcuffed, there is no evidence

that Officer Morabito acted with excessive force at any time.  Indeed, Solovy's own response

brief to Defendants' Motion for Summary Judgment fails to indicate how Officer Morabito used

force against Solovy.  Outside of Solovy's unsupported claims of liability, there is no evidence

that Officer Morabito manhandled or handcuffed Solovy and there is no evidence that Officer

Morabito ignored Solovy's complaints that the handcuffs were too tight.  The record does

indicate that Officer Morabito acted quickly to provide Solovy with medical assistance, and that

he stayed on the scene after Solovy had become lucid in order to ensure that Solovy's family

picked Solovy up safely.

9

Solovy asks this Court to simply accept his contention that Officer Morabito may have used excessive force.  With no evidence to support such allegations, Solovy's vague and conclusory allegations against Officer Morabito are insufficient to support this claim.  See Lee v. Ritter, 2005 WL 3369616, *10 (E.D.Tenn. 2005).  No rational trier of fact could find Officer Morabito liable for the use of excessive force under these facts.  Therefore, I GRANT Defendant's Motion for Summary Judgment with respect to the excessive force claim against Officer Morabito.

### ii) Sergeant Carroll

Solovy claims that Sergeant Carroll used excessive force by handcuffing him too tightly, ignoring Solovy's repeated requests that Carroll loosen the handcuffs, forcefully pulling him around by the handcuffs, and throwing him to the ground in order to handcuff him.  Solovy claims that he received injuries due to these actions and that some of these injuries later required surgery.

### The Alleged Excessive Use of Force in Detaining Solovy

In considering whether Sergeant Carroll used excessive force in detaining Solovy, this Court must determine whether the force used was objectively reasonable by balancing the nature and quality of the intrusion on the Solovy's Fourth Amendment interest against the countervailing governmental interest at stake. Graham v. Connor, 490 U.S. at 396.

Taking the facts in a light most favorable to Solovy, the record indicates that Sergeant Carroll used some force, but not excessive force.  Solovy claims that Sergeant Carroll pulled him out of the car using the handcuffs, one end of which was attached to Solovy's right wrist.  Also Solovy states that Sergeant Carroll threw him to the ground and forced his left arm back in order

to handcuff Solovy's hands together. Sergeant Carroll also allegedly pulled Solovy up off of the ground using the handcuffs before seating him on the curb.

Outside of Solovy's testimony, the only evidence we have of the force Sergeant Carroll used are his claimed injuries. As explained in the next section, Solovy may be able to attribute the scrapes on his wrists and the ecchymoses[1] on his right leg to the use of force by Sergeant Carroll, but he cannot blame his carpal tunnel syndrome or cubital tunnel syndrome on the actions at issue here. Also, the process of being handcuffed can be unpleasant; this is especially true if the subject is not in control of his body and mind. The record indicates that Solovy was not in control of himself. Thus, relatively minor injuries such as abrasions and an ecchymoses are not indicative of excessive force.

Thus, Sergeant Carroll used some force, but under the facts and circumstances with which he was presented, this force was reasonable. It was reasonable because Solovy was acting erratically, appeared intoxicated, and could have constituted a danger to Solovy, Sergeant Carroll, or the public.

The Sixth Circuit has recognized that erratic behavior and apparent intoxication warrants the use of some force. In <u>Schliewe v. Toro</u>, 138 Fed.Appx. 715, 721-22 (6th Cir. 2005), the Sixth Circuit held that an officer had not used excessive force after he had punched an individual who was trying to escape from a holding area. The Court in <u>Schliewe</u> stated that punching someone might not be the best way to subdue him, but that the officers actions were not unreasonable because "it was difficult for the officers to judge [the plaintiff's] intentions because

---

[1]The Merriam-Webster Online Dictionary states that an ecchymosis is "the escape of blood into the tissues from ruptured blood vessels." Definition from the Merriam-Webster Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/ecchymoses

[he] had behaved erratically during the evening and was apparently intoxicated." Id. at 722.

Similarly, here, Sergeant Carroll was presented with an individual who was acting erratically and who was apparently intoxicated. The record also indicates that Solovy may have been acting aggressively.[2] A reasonable officer approaching Solovy in this state would not necessarily immediately realize that Solovy was suffering from a medical condition and could conclude that Solovy was likely either very drunk or on drugs. Further, this behavior would have made it difficult for Officer Carroll to correctly deduce Solovy's intentions. Due to this ambiguous situation, Sergeant Carroll's response of handcuffing Solovy was reasonable. Of course, unlike in Schliewe, there is no evidence Sergeant Carroll tried to escape, but handcuffing, as evinced by Solovy's lack of major injuries, is a more mild use of force than punching.

It is also clearly established within the Sixth Circuit that an officer can use some force against a suspect who constitutes a threat to the officer or the public. See Burchett, 310 F.3d at 944. Smith v. Ball State Univ., 295 F.3d 763, 770 (7th Cir. 2002), held that police officers had not used excessive force , when those officers had detained, handcuffed, tackled, and unsuccessfully attempted to "knee strike" a diabetic plaintiff who was not resisting. The Smith Court emphasized that the police officers were justified in using some force because: the plaintiff's unresponsiveness due to his diabetic shock could reasonably be perceived as resistance; and a reasonable officer might have believed that the plaintiff had been driving while intoxicated, and was thus a threat to public safety. Id. at 770-71.

In the present case, when Sergeant Carroll approached Solovy, Solovy was behind the

---

[2]Plaintiff's mother, Judith Solovy has testified that "[d]iabetic people are very aggressive when they are out of it because they have no control over their body, no control over their mind."

wheel of a car and blocking traffic, was acting incoherently, appeared either ill or intoxicated, and had an open intoxicant in the car. Because of his condition, Solovy was unable to communicate the problem to Sergeant Carroll. A reasonable officer could believe that such an individual could constitute a threat. People who are intoxicated and who are acting erratically can quickly turn violent, and securing Solovy with handcuffs, even quickly and forcefully, was reasonable because there was a chance that Solovy could have tried to attack Officer Carroll or flee in the car.

Furthermore, the use of handcuffs on a person who is experiencing a diabetic episode while in the driver's seat of a car is not per se excessive force. In Smith, the Court held that while the officers did not remove the handcuffs after learning of the plaintiff's diabetic condition, this use of force was "measured, brief and appropriate to accomplish the purposes of the investigatory stop-securing [plaintiff] and his vehicle, dispelling any notion that [plaintiff] was engaged in criminal activity and preserving the officers', public's and even [plaintiff's] safety." Id. at 771. Here, there is no evidence that Sergeant Carroll kept Solovy in handcuffs after he discovered he was diabetic. And for the reasons stated above, the evidence indicates that Sergeant Carroll used reasonable force in handcuffing Solovy for a short period of time.

Viewed in the light most favorable to Solovy, the evidence does not indicate that Sergeant Carroll used excessive force. Thus, I find that no rational trier of fact could determine that Sergeant Carroll's alleged use of force in detaining Solovy constitutes a violation of Solovy's Fourth Amendment rights, and I GRANT Defendants' Motion for Summary Judgment on this claim.

<u>The Alleged Excessive Use of Force in Handcuffing Solovy</u>

13

Solovy also alleges that Sergeant Carroll handcuffed him too tightly and that Sergeant Carroll refused to loosen the handcuffs after Solovy asked him to do so.  Because the Sixth Circuit has a specific standard for excessively forceful handcuffing, I will analyze this claim separately.

The Sixth Circuit has indicated that there is a right to be free from excessively forceful handcuffing.  Kostrzewa v. City of Troy, 247 F.3d 633, 641 (6th Cir.2001).  However, not all allegations of tight handcuffing amount to excessive force.  In order to reach a jury on such a claim, the plaintiff must allege some physical injury from the handcuffing and must show that the officers ignored complaints that the handcuffs were too tight.  Lyons v. City of Xenia, 417 F.3d 565, 575-76 (2006).  Even if Solovy can show that Sergeant Carroll ignored complaints regarding the tightness of the handcuffs, Solovy cannot allege a legally sufficient physical injury.

Solovy alleges that Sergeant Carroll's actions resulted in serious injury.  In fact, he argues that Sergeant Carroll's actions were so severe, that they resulted in the need for the carpal tunnel and cubital tunnel release surgery performed on Solovy's right arm.  However, the record simply cannot support such a claim.  It indicates that Solovy has had problems with his right arm since at least 2001, when he sought chiropractic treatment for an injury to his right shoulder and elbow.  Records from William Beaumont Hospital dated October 24, 2004, document a history of carpal tunnel syndrome related to the use of computers, bowling, and possibly even an accident where he was run over by a car.  In February of 2006, four months prior to the diabetic episode that is central to this case, Solovy requested a referral to an orthopedist for pain in his shoulder and had been taking Vicoden for pain.  The medical records from the August of 2008 surgery performed on Solovy's right arm also indicate that the procedure was intended to relieve

14

a long-standing condition.

Solovy may argue that Sergeant Carroll's actions were severe enough to contribute significantly to his carpal tunnel syndrome and cubital tunnel syndrome. Again, the record contradicts such arguments. After being treated by EMS, Solovy was lucid and refused further treatment. Solovy did not at this time represent that he had sustained a significant injury. He did not seek further medical attention until 5 p.m the next day, when he visited the emergency room. The emergency room record gives no indication that the events of the previous day were the root cause of Solovy's carpal and cubital tunnel conditions. Because there is insufficient evidence to link Solovy's carpal tunnel syndrome or cubital tunnel syndrome to Sergeant Carroll's actions, no rational trier of fact could find that Solovy's surgery was necessitated by the actions of Sergeant Carroll.

The emergency room record does note that Solovy had multiple abrasions on his wrists and had sustained an ecchymoses to his right leg. The wrist abrasions tend to support the contention that Sergeant Carroll handcuffed Solovy. Nevertheless, the record does not indicate that the abrasions were anything more than short term, superficial injuries. Such injuries are insufficient to allow Solovy to reach a jury on the issue of excessively forceful handcuffing. In Mason v. Adams, the Court stated that regardless of a plaintiff's beliefs, the absence of physical evidence of excessive force warrants the dismissal of a plaintiff's claims. 2007 WL 162192, *5 (E.D.Mich. 2007). Mason found that "[h]andcuffing is not meant to be pleasant, and it may certainly be uncomfortable, and even to a certain extent painful. However, that alone does not amount to proof of a claim of excessive force. As the Hannula court explained, 'if the injury is minimal, it is likely that the force creating the injury was also minimal.'" Id.

I rule that the abrasions on Solovy's wrists are the type of minimal injury envisioned by the <u>Mason</u> Court.  Handcuffing can be uncomfortable.  This is especially true when the individual handcuffed is not in control of himself.  Solovy may have suffered some scrapes as a result of Sergeant Carroll handcuffing him, but these relatively minor injuries do not indicate that the force Sergeant Carroll used in handcuffing Solovy was unreasonable.

Thus, I hold that no rational trier of fact could find that Sergeant Carroll subjected Solovy to excessively forceful handcuffing in violation of Solovy's Fourth Amendment rights and GRANT Defendants' Motion for Summary Judgment on this claim.

**2) Arrest and Imprisonment Without Probable Cause**

Solovy argues that the actions allegedly taken by the Officers constituted arrest and imprisonment without probable cause and a violation of his Fourth Amendment rights.  The Fourth Amendment guards against unreasonable seizures.  A plaintiff is seized within the meaning of the Fourth Amendment only if, in light of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.  <u>U.S. v. Mendenhall</u>, 446 U.S. 544, 554 (1980).  Generally, "every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." <u>U.S. v. Vite-Espinoza</u>, 342 F.3d 462, 471-72 (6th Cir. 2003) (quoting <u>Michigan v. Summers</u>, 452 U.S. 692, 699-700 (1981) (internal quotation marks omitted).

Here, Solovy states that he was handcuffed.  Also, the record indicates that the Officers would not have allowed Solovy to leave the scene, and a reasonable person in Solovy's position would not have believed that he was free to leave.  Thus, Solovy was seized within the meaning of the Fourth Amendment.

16

Assuming that Sergeant Carroll handcuffed Solovy, a tougher question is whether or not the detention ripened into a full arrest. However, this Court need not determine whether or not the Officers formally arrested Solovy, because even if they did, the Officers had probable cause to do so. See Smith, 295 F.3d at 769. "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). "Probable cause requires only the probability of criminal activity, not some type of 'prima facie' showing." Jolley v. Harvell, 254 Fed.Appx. 483, 486 (6th Cir. 2007). A determination of probable cause involves an examination of all facts and circumstances within an officer's knowledge at the time of arrest. Id. at 487.

Sergeant Carroll found Solovy unconscious in the driver's seat of a car. After Sergeant Carroll awakened Solovy, Solovy began acting erratically. Solovy also had an intoxicant in his car. This clearly constitutes facts and circumstances sufficient to warrant a reasonable person in believing that Solovy had committed, was committing, or was about to commit an offense. For instance, a reasonable person would be warranted in believing that Solovy had been driving while under the influence of alcohol, which is against Michigan law. See Mich. Comp. Laws § 257.625(1). Thus, accepting Solovy's argument as true (i.e., the Officers arrested him), the Officer's had probable cause to arrest Solovy. See Smith, 295 F.3d at 770. Further, once the Officers determined that Solovy was suffering from a problem associated with his diabetes, for the reasons discussed throughout this opinion, their decision to detain him until he received medical attention clearly comports with the Fourth Amendment's reasonableness requirement.

17

Solovy's allegations of false imprisonment are similarly without merit. False imprisonment involves an unlawful restraint on a person's liberty or freedom of movement. Walsh v. Taylor, 263 Mich. App. 618, 627 (2004). To constitute false imprisonment, "[t]he restraint must have occurred without probable cause to support it." Id. I have already determined that the restraint placed on Solovy was supported by probable cause. Thus, Solovy cannot recover for false imprisonment.

The seizure and restraint of Solovy was supported by probable cause and did not constitute an unreasonable seizure. Thus, I GRANT the Defendants' Motion for Summary Judgment with respect to Solovy's claim of unreasonable arrest and imprisonment without probable cause.

### 3) Deliberate Indifference to Serious Medical Needs

Solovy also claims that the Officer Morabita and Sergeant Carroll are liable because they acted with deliberate indifference to his serious medical needs. "[D]eliberate indifference" to the serious medical needs of pretrial detainees normally constitutes a substantive due process violation. Estate of Owensby v. City of Cincinnati, 414 F.3d 596, 602 (6th Cir. 2005).

Establishing deliberate indifference requires a showing that the defendants knew of and disregarded a substantial risk of serious harm to the pretrial detainee's health and safety. Jones v. City of Cincinnati, 521 F.3d 555, 560 (6th Cir. 2008). The deliberate indifference inquiry has an objective and a subjective component. Preyor v. City of Ferndale, 248 Fed.Appx. 636, 642 (6th Cir. 2007). In cases such as this, the Sixth Circuit has stressed the subjective component:

> The Supreme Court has equated deliberate indifference with "criminal recklessness." That is, a defendant must know of and disregard a substantial risk of serious harm. The inquiry is subjective: "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference."  It is insufficient for a plaintiff to allege that there existed a danger that an officer should have been aware of.  Deliberate indifference is something more than negligence.

Weaver v. Shadoan, 340 F.3d 398, 410 (6th Cir. 2003) (internal citations omitted).

In Watkins v. City of Battle Creek, 273 F.3d 682 , 684 (6th Cir.2001), officers executed a search warrant at the apartment of a suspected drug dealer.  The officers found the suspect exiting a walk-in closet.  Id.  The closet contained a ripped plastic bag with white crumbs around it, and nearby was a larger piece of white substance later identified as crack cocaine.  Id.  The officers saw the suspect licking his lips, observed a pinkish foamy drool running from his mouth, and saw a white speck near his mouth.  Id.  However, the officers did not see the suspect put drugs into his mouth.  Id.  The officers warned the suspect that he could die from ingesting drugs and offered to take him to a hospital.  Id.  The suspect repeatedly denied having swallowed drugs and refused medical treatment.  Id.  The officers failed to inform the jailers or their supervisors of the suspicion that the suspect had swallowed drugs.  Id.  At the jail, the suspect complained of an upset stomach and appeared intoxicated.  Id.  The suspect was again offered medical treatment, but rejected it.  Id. at 685.  The officers and jailors did not summon paramedics to examine the suspect while the suspect was conscious.  Id.  Later the suspect was found dead in his cell.  Id.  The Sixth Circuit found that these facts were insufficient to demonstrate that the police officers should have know that the suspect had ingested cocaine.  Id. at 686.

The facts in the present case do not establish a claim for deliberate indifference under the standard of Watkins.  Taking the facts in a light most favorable to Solovy, there is no evidence that Officer Morabito or Sergeant Carroll knew about Solovy's diabetic condition until Officer Morabito noticed Solovy's insulin pump.  The fact that items for the treatment of diabetes were

19

in sight in Solovy's car, and the fact that Solovy's medical alert necklace was broken, do not establish that the Officers knew of and disregarded a substantial risk of serious harm. The Officers' attention could reasonably have been directed away from the medical items, or they could have reasonably failed to realize in such a short amount of time what these items were. Also, Solovy has provided no evidence that it is more likely that the Officers broke his medical necklace, and thus became aware of it, than it is that Solovy broke it while in the grip of hypoglycemia. On the other hand, the evidence does establish that Solovy's condition could reasonably have been interpreted as intoxication, and that Officer Morabito quickly discovered Solovy's insulin pump. The record also indicates that the Officers summoned EMS within five minutes of Sergeant Carroll arriving on the scene.

Solovy's Complaint states that either Officer Morabito or Sergeant Carroll received a call from Solovy's daughter on Solovy's cell phone, and that the officer speaking to Solovy's daughter told her that "Your Dad's drunk; we're taking him to jail!" This charge, however, is belied by the record, which shows that EMS was dispatched two minutes before Solovy's cell phone received the call. Solovy's mother provided further evidence that EMS was dispatched before the Officers received the call when she testified that after she took the phone from Solovy's daughter, she heard "ambulances, sirens."

The evidence indicates that the Officers were attentive to Solovy's medical condition once they became aware of it and summoned EMS in a timely manner. Thus, I GRANT Defendants' Motion for Summary Judgment with respect to Solovy's claim of deliberate indifference against the Officers.

**C) Qualified Immunity**

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When ruling upon the issue of qualified immunity, the Court must consider two factors that the Supreme Court set forth in Saucier v. Katz, 533 U.S. 194, 201 (2001): First, taken in the light most favorable to the nonmoving party, the court must consider whether the facts alleged show the officer's conduct violated a constitutional right. Second, if the answer to this first question is "yes," then the court must consider whether the violated constitutional right was clearly established under the law so as to place a reasonable officer on notice that his conduct would be unlawful in the situation he confronted. The plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. Haynes v. City of Circleville, 474 F.3d 357, 362 (6th Cir. 2007). Whether the defendant is entitled to qualified immunity is a question of law. Id.

For the reasons stated above, taken in a light most favorable to Solovy, the facts show that Officer Morabito and Sergeant Carroll did not violate Solovy's constitutional right to be free of excessive force, violate his right to be free of unreasonable arrest or imprisonment without probable cause, or act with deliberate indifference to his medical needs. Because Officer Morabito and Sergeant Carroll are entitled to summary judgment on Solovy's constitutional claims, it is unnecessary to reach the issue of qualified immunity.

## **Conclusion**

For the reasons set forth above, I GRANT Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**


Date: ___March 27, 2009___          s/John Feikens_____
                                    United States District Judge

```
┌────────────────────────────────────────────┐
│              Proof of Service                │
│                                              │
│ I hereby certify that the foregoing order    │
│ was served on the attorneys/parties of       │
│ record on March 27, 2009, by U.S. first      │
│ class mail or electronic means.              │
│                                              │
│                   s/Carol Cohron_____    │
│                   Case Manager               │
└────────────────────────────────────────────┘
```